ISRAEL DUBE vs. GEORGE B. PECK, Town Treasurer.

PROVIDENCE—FEBRUARY 27, 1901.

PRESENT : Tillinghast, Douglas, and Blodgett, JJ.

| 22 | 443 |
|---|---|
| s22 | 467 |
| 22 | 443 |
| f27 | 115 |
| 27 | 175 |

(1)  *Building-Contracts.   Municipal Corporations.    Ultra Vires.   Waiver.
Release.*

X., a contractor, entered into a contract with a building-committee, legally
appointed by the town of B., to erect a school-house "on the north side
of the Common," to be completed on or before April 1, 1896.   The build-
ing-committee located the site of the school-house, and X. began work.
He was the same day ordered to stop work by the town council.   The
site was finally located by the school committee on a different portion of
the common, and X. began work and finished the building September 16,
1896.   The money due under the contract was paid, and X. gave the town
a release "in full of all claims on account of contract."   Thereafter X.
brought action against the town, alleging that he commenced the erec-
tion of the building on the new site upon the implied promise of the
town to compensate him for all damage resulting by reason of the delay
occasioned by the change of location, of which the town had notice :—

*Held*, that under Gen. Laws R. I. cap. 60, § 4, the entire jurisdiction of
selecting a site for a school-house being confided to the school commit-
tee, the attempt by the building-committee to locate the school-house
was a nullity ; and X., having seen fit to contract for the erection of the
school-house before its location had been selected by the authorized
body, could not hold the town liable in this action for the failure of that
body to act.

*Held*, further, that the town was not estopped to deny the authority of the
building-committee.   Those dealing with agents of municipal corpora-
tions must ascertain the limits of their powers at their peril.

*Held*, further, that the election of the plaintiff to proceed with the contract
after the delay was a waiver of all claims arising from the delay, and
that he was further precluded from recovery by the receipt.

ASSUMPSIT.   The facts are stated in full in the opinion.
Heard on petition of defendant for a new trial.   Case re-
manded with direction to enter judgment for defendant.

BLODGETT, J.   It is not disputed that on the 10th day of
August, A. D. 1895, the plaintiff executed the following con-
tract with the town of Bristol :

"THIS AGREEMENT, made and concluded this tenth day of
August, A. D. one thousand eight hundred and ninety-five,

by and between the town of Bristol, R. I., by Ezra Dixon, Sanford B. Munro, James Tobin, Edward B. Pearse, A. P. Nerone, Eben Hill, and James C. Church, a building committee legally appointed by the qualified electors of the town of Bristol, State of R. I., party of the first part, and Israel Dube, of the town of Bristol, State of R. I., party of the second part,

"WITNESSETH, that the said party of the second part, in consideration of the promises and agreements herein mutually entered into, does for himself and for his executors, administrators, or assigns, hereby promise and agree to and with the said party of the first part, that he, the said party of the second part shall and will, in a good and workmanlike manner, and to the satisfaction and acceptance of Messrs. Wm. R. Walker & Son, architects, said satisfaction and acceptance to be expressed in writing, at his own proper cost and expense furnish all the material and perform all the labor which may be required in the erection and completion of a new eight-room brick school-house on the north side of the common, in the town of Bristol, R. I., in accordance with the plans, elevations, sections, and detail plans prepared and furnished by said architects, together with all work called for in the masons' and carpenters' specifications therefor, which are of even date herewith and form a part of this contract, for the full sum of eighteen thousand three hundred $^{0}\%_{100}$ ($18,300 $^{0}\%_{100}$) dollars, which will be received and be payable as follows; Eighty per cent. of the full amount of materials furnished and labor performed to be paid from time to time, as the work progresses and upon the presentation of the writing aforesaid expressing satisfaction with the said materials furnished and labor performed; said certificate, however, in no way lessening the total and final responsibility of the contractor, neither shall it exempt the contractor from liability to replace any and all work that may afterwards be found to have been done in an improper and unworkmanlike manner, or not in accordance with the drawings and specifications, either in execution or materials; the balance thereof to be paid upon the completion and delivery of said school-house to the said party of

the first part, and upon the presentation of a certificate from the architects that the said materials are furnished and labor performed to their satisfaction. That said party of the second part, his executors, administrators, or assigns, shall and will hold said party of the first part harmless, saved, and indemnified from and against all loss, cost, damage, payment, and expense on account of all mechanics' or other liens, and also on account of any and all other lawful claims and demands for materials furnished or labor performed on said schoolhouse, and also all materials furnished and labor performed under this contract on the part of the said party of the second part shall be fully completed and performed on or before the first day of April, A. D. one thousand eight hundred and ninety-six. And said party of the first part, said party of the second part well and faithfully performing said contract in all its parts and satisfying said party of the first part that no liens or other claims for labor done or materials furnished in the aforesaid work exist, will pay therefor the said sum of eighteen thousand three hundred ⁰⁰/₁₀₀ ($18,300 ⁰⁰/₁₀₀) dollars, to be in full for all claims and demands therefor, and which sum shall be paid in the manner as aforesaid.

"And it is hereby mutually understood and agreed that no payment for extra work shall or will be claimed or made unless ordered in writing by said party of the first part. And that the within-named party of the second part shall, if required, furnish the within-named architects at the time of their giving said party of the second part any order for payment on account of this contract, with a release from all sub-contractors and material men of their rights of lien under chapter 177 of the Public Statutes and all amendments thereto, for materials furnished or labor performed for the said party of the second part on the said and within-named building. Further, that the within-named party of the second part shall furnish and maintain on the building a foreman for both brick and carpenter's work, each of which shall be amply qualified to superintend their respective parts of the work, and such foremen shall at all times be such par-

ties as the architects select and approve, during the continuance of the entire work and until the same is completed.

"In witness whereof the parties hereto have signed and executed these presents at Bristol, R. I., this tenth day of August, A. D. one thousand eight hundred and ninety-five.

"Signed in presence of

|  | Town of Bristol, |
|---|---|
|  | By Ezra Dixon, |
|  | Sanford B. Munro, |
| "Committee { | James Tobin, |
|  | Edward B. Pearse, |
|  | Augustine P. Nerone, |
|  | Eben Hill, |
|  | James C. Church. |

"W. Howard Walker,
       to I. D.          Israel Dube."

That on August 13, 1895, the building-committee located the site of the school-house at about the middle of the north end of the common, and the plaintiff on the same day began work there, erecting some sheds for his material and staking out the cellar for the school-house. That on the same day he was notified to cease his work by the town sergeant, acting under the orders of the town council, and that in pursuance of such notice he at once ceased operations.

That the site of the school-house was finally located by the school committee of the town on the northwest corner of the common, and that on September 19th, 1895, this location was ready for the plaintiff to work upon, and that he at once began work thereon and finished the building on September 16, 1896. This building was duly accepted by the proper authorities, and the money due under this contract—$18,300—together with some allowances for extra work, was duly paid to the plaintiff, the following receipt being given by him at the time of the last payment, viz. :

"Bristol, R. I., November 19th, 1896.

"Received of town treasurer, Bristol, R. I., eleven hundred sixty-two and $^{71}/_{100}$ ($1,162.71) dollars, in full for the

amount of this order, and in full for all claims on account of contract and extra work on the Wadley school-house at Bristol, R. I.

> "(Signed)   ISRAEL DUBE,
>
> " Contractor."

On November 1, 1898, the plaintiff brought his action against the town in the Common Pleas Division of the Supreme Court for the county of Bristol, and recovered a verdict against the town for the sum of $4,125, upon a declaration of which the only count requiring consideration is as follows :

" For that the said Israel Dube at, to wit : said Bristol, on, to wit : the 10th day of August, 1895, entered into a written contract with said town of Bristol for the construction of a certain school-house for the sum of $18,300.00, said school-house to be located on the north side of the common in said Bristol, and to be completed on or before April 1st, 1896 ; that the said town of Bristol thereupon selected a site for said school-house upon the north side of the common aforesaid, and thereafter on, to wit : the 13th day of August, 1895, the said plaintiff, having completed his preparations therefor, commenced the construction of said building on the site so selected ; that thereupon, in the afternoon of the, to wit : 14th day of August, 1895, the said town of Bristol, acting by its town council, notified and ordered the said plaintiff to cease and quit work upon said building, and not to proceed further in the construction thereof until so ordered by said town council, which order and notification was served upon said plaintiff by the town sergeant of said town, with sundry threats of serious personal consequences to him if he disobeyed said order ; that thereafter said plaintiff was informed and notified by said town, through its agent, that the site selected for said school building was to be abandoned, and that the building was to be erected upon another site ; that said new site was not selected nor made ready for the commencement of the construction of said school-building until a long time, to wit: six weeks after the commencement of the construction of said

building under the original contract; that the said plaintiff, at the request of said town and without any intention of waiving any right or remedy which he might have incident to the breach of the original contract, commenced the construction of said building upon the site last selected, as soon as the same was in proper condition for the commencement of said work; that he commenced the construction of said building at the request and upon the implied promise of said town to pay and fully compensate him for all damage resulting to him by reason of the delay in the commencement and completion of said building occasioned by the change of the location therefor and the action of the town aforesaid connected therewith, of which said town had full notice; that said plaintiff proceeded with the construction of said building with all the rapidity possible under the changed circumstances due to the delays aforesaid; that the said delays prohibited the completion of said building at the time agreed upon in the original contract therefor, and also caused to said plaintiff a large and unavoidable expense not incident to said original contract, but due wholly and arising out of said delay, all of which additional expense amounted to a very large sum of money, to wit: ———— thousand dollars; that the completion of said building by said plaintiff, under the changed conditions aforesaid, caused not only a loss of profit to said plaintiff, but became a matter of great burden and expense to said plaintiff, the cost to him of completing said building being many thousand dollars, to wit: five thousand ($5,000) dollars in excess of the price for the same agreed to in the original contract therefor, all of which excess money was paid by said plaintiff in pursuance of the implied promise of said town to re-imburse him such amount; that said plaintiff also was caused much damage and suffered much loss because of his inability to complete said building at the time specified in said original contract, and his inability, on account thereof, to undertake his other and usual season's work; that said plaintiff also suffered other loss and damage on account of said delay in the completion of said building, because he could not, on account thereof, receive the payments and have the use of

the money to which he would have been entitled under the original contract. Wherefore, by reason of the aforesaid, the said town became liable to pay to the plaintiff all of said sums, and in consequence of such liability impliedly undertook and promised to pay the same. All of which is to the plaintiff's damage eight thousand ($8,000) dollars."

Then follows an averment that the claim was duly presented to the town council and disallowed.

(1) The town now petitions for a new trial because it says that the verdict was against the law and the evidence.

The gist of the plaintiff's cause of action is damages caused by the wrongful delay of the town in selecting a location for the school-building in question. And the first question which arises is as to the obligation of the town under this contract to select and furnish a site for the proposed school-house.

Section 4, chapter 60, of the General Laws provides as follows :

"The school committee shall locate all school-houses, and shall not abandon or change the location of any without just cause."

It follows, consequently, that the building-committee mentioned in this contract had no power to locate the school-house in question, neither did the town council have that power. The attempt by the building-committee to locate the school-house on the middle of the north side of the common on August 13, 1895, was a mere nullity. The statute confided entire jurisdiction over the selection of the site for the school-house to the school committee of the town, a body over whom neither the building-committee nor the town council had any jurisdiction. Neither body could require the school committee to locate the school-house where the contract called for it to be located, or, indeed, could compel that body to locate the school-house at all. It should be borne in mind that the town has paid the full contract price—$18,300—which was called for by the contract, and that this action is not for any part of that amount. If the plaintiff saw fit to contract for the erection of a school-house before a location had been selected therefor by the only body authorized by law to locate

the same, he cannot now sue the town because a body of public officers who were not parties to this contract did not locate the building where he expected it would be located or within the time in which he considered they should have acted. Briefly stated, the town cannot in this action be held liable for the failure of the school committee to act in the matter of the location.

In *Howland* v. *School District*, 15 R. I. 186, decided in 1885, the court, speaking by Chief Justice Durfee, says, concerning the power of a school district to locate a school-house : " Possibly it may be thought that the vote to locate implies a vote to erect and is, therefore, equivalent to it. We do not think so. The vote to locate was, in point of law, a mere nullity, the power to locate being in the school committee. The vote was merely the expression of a preference. The statute contemplates that the selection of the site shall precede the vote to build." And in *Gardiner's Appeal*, 4 R. I. 602, Ames, C. J., says : " The school committee of Jamestown, acting by a majority, have, according to the *discretionary* power vested in them by law, determined the place of the new school-house to be built in District No. 1 of their town. . . . As, however, the *discretion* to decide this question is, by law, vested in the *school committee*, I can see no wrong done any one by their decision, however unwise it may be, and no question for the commissioner, upon appeal, to determine." This last decision was modified, as to the right of appeal to the school commissioner, in *Cottrell's Appeal*, 10 R. I. 615, where, at page 619, Potter, J., says that the location established by the commissioners on appeal " could not be changed without bringing proceedings again before the committee."

But it may be contended that the plaintiff is entitled to recover because he contracted in good faith with a building-committee authorized to make a contract to erect the school-house, and that he gave notice to the building-committee that he should claim damages for delay in selecting a site, and that consequently the town is estopped to deny his right to recover. The testimony is not entirely satisfactory that his claim of

notice to the building-committee that he should claim damages was anything more than a general conversation with one or more members of the committee. But, even if that were not so, we think there is no question of estoppel in this case. The town is a municipal corporation, and this court has repeatedly decided that those who deal with agents of municipal corporations must ascertain the limits of their powers at their peril.

In *Austin* v. *Coggeshall*, 12 R. I. p. 332, decided in 1879, Chief Justice Durfee says of the case then before the court : "It is of the essence of the defence that the persons who furnished the entertainment acted in good faith, being ignorant that the city was incapable of contracting for it. If they knew the city was incapable of contracting for it, the defence falls to the ground. But was it not their duty to know it ? And can the court entertain the supposition that they did not know it ? It is well settled that a municipal corporation, when sued directly on a contract which it is incapable of making, cannot be estopped from taking advantage of its incapacity because the party suing has acted on the contract in good faith, supposing it to be legal, for the reason that any person who contracts with such a corporation, which is a creature of public law, is bound at his own peril to know the extent of its capacity." See cases cited. See also *Farnsworth* v. *Pawtucket*, 13 R. I. p. 88 ; *Mathewson* v. *Hawkins*, 19 R. I. 16 ; *McAleer* v. *Angell*, 19 R. I. 688.

It was conceded at the argument, by the plaintiff's counsel, that on the 19th day of September, 1895, after the delay in selection of the lot, the town could not have required the plaintiff to perform the contract if he had refused so to do. We are clearly of the opinion that his election to proceed with the contract after the delay was a complete waiver of all claims arising from the delay, and that in addition he is also precluded from recovery in this action by the receipt which he gave the town at the time of the last payment. The most favorable contention for the plaintiff is that his cause of action arises out of the contract in question, and he

has acknowledged full payment of all sums due him there-under.

We are, consequently, of the opinion that the plaintiff has no cause of action, and that the case must be remanded to the Common Pleas Division with direction to enter *judgment for the defendant for costs.*

*Henry W. Hayes*, for plaintiff.

*O. L. Bosworth*, for defendant.